IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03312-NRN

MICHAEL GENE SOLIDAY,

Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Michael Gene Soliday was not disabled for purposes of the Social Security Act. AR[2] 21. Mr. Soliday has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #12. This Court has carefully considered the Complaint (Dkt. #1), the Social Security Administrative ("SSA) Record (Dkt. #10), the parties' briefing (Dkt. ##14, 16–17), oral argument by the

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##10, and 10–1 through 10–25.

parties at the hearing on September 13, 2019, and the applicable case law. For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS this matter for further proceedings.

## **Factual Background**

Mr. Soliday had a stroke on April 2, 2015. He was hospitalized for two days and received inpatient care for another two weeks. AR 336–779. Mr. Soliday was diagnosed with right third-nerve palsy (damage to the nerve in his right eye), inconsistently distributed left sided weakness, left sided sensory disturbance and headaches. AR 340. It was noted shortly after his stroke that Mr. Soliday's depression was likely caused by the stroke. AR 767 & 772. After he was discharged, the record reflects that Mr. Soliday received months of outpatient therapy, including regular meetings with a therapist beginning in May 2016. AR 456–782, 833. On August 11, 2016 Mr. Soliday underwent surgery to correct damage to the nerve in his right eye, but still has double vision. AR 814–15, 39.

Mr. Soliday initially filed an application for disability benefits on June 30, 2015, and "protectively" filed an application for social security income on December 30, 2015. In his submission to the SSA dated September 19, 2015, Mr. Soliday claims he suffered from memory loss, loss of mobility on his left side, loss of use of his right eye, depression, extreme vertigo and dizziness, and no depth perception, describing his limitations by stating "my disability has made me lose my ability to drive, think, reason, remember, walk without help, stay home alone, take care of my family, do any kind of work. I am no longer able to do

anything I done before." AR 232–40. Mr. Soliday's wife completed a Third-Party Function Report in October 2015 in which she noted that Mr. Soliday was mentally challenged, suffered from memory loss, had difficulty controlling his left harm, dragged his left leg, had double vision, and was taking two hours to get dressed and take his medications. AR 241–42. In November 2015, Mr. Soliday saw a neurologist, Dr. Joy Dejong Lago, who concluded that Mr. Soliday had cognitive weaknesses, visual, motor and processing speed weaknesses, as well as depression, all of which she attributed to his stroke. AR 780.

Mr. Soliday was evaluated by Dr. Kerry Kamer, D.O., in December 2015 for a consultive physical examination. AR 784—91. Dr. Kamer is a family medicine practitioner. *Id.* Dr. Kamer opined that Mr. Soliday had no sitting, standing, walking or manipulative limitations, but that he should be restricted from dangerous workplace conditions. *Id.* Dr. Kamer also concluded, on the basis of a "brief mental status review" that Mr. Soliday appeared to have no significant neurocognitive limitations. *Id.*

On March 2, 2015, Dr. Gerald McIntosh, a neurologist who treated Mr. Soliday in the months after his stroke, completed a "medical assessment of ability to work." AR 792–97. In his assessment, Dr. McIntosh indicated that Mr. Soliday could sit for no more than an hour, stand for 15 minutes, walk for five minutes, sit for two hours out of eight, and walk for 30 minutes out of eight hours, but was not able to climb stairs, avoid ordinary hazards, read ordinary print, or view a computer screen. *Id.*

3

Beginning in April 2016 and continuing until at least November 2016, Mr. Soliday was treated for depression by a psychotherapist, Molly McLaren, Ph.D. AR 833—60. Dr. McLaren diagnosed Mr. Soliday with major depressive disorder and anxiety disorder. *Id.*

Mr. Soliday maintains that he was and continues to be disabled as a result of the stroke. After his initial application was denied, Mr. Soliday requested a hearing, which was held on August 22, 2017. The ALJ issued her decision denying Mr. Soliday's application on October 31, 2017. Mr. Soliday submitted a request for review, with a new medical report prepared by Dr. Lago, which was denied on October 16, 2018.

**Legal Standard**

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax*, 489 F.3d at 1084. "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . . the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered

separately, would be of such severity." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The SSA uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See id.*; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

### Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v.*

*Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax*, 489 F.3d at 1084.

## **ALJ's Findings**

At the second step of the Commissioner's five-step sequence for making determinations, the ALJ found that Mr. Soliday "has the following severe impairments: status post stroke (thalamic infarct or cerebrovascular accident) and left shoulder disorder (20 CFR §§ 404.1520(c) and 416.920(c))." AR 34. The ALJ further found that these medically determinable impairments significantly limit Mr. Soliday's ability to perform basic work activities, and stated that she included in her consideration Mr. Soliday's "thalamic pain complaints, left sided neurological issues and vision difficulty" that were associated with the stroke. AR 34–35.

But, the ALJ concluded that Mr. Soliday's "medically determinable mental impairment of depression or anxiety (or both) does not cause more than minimal limitation in his ability to perform basic mental work activities." AR 35. The ALJ found that while Mr. Soliday "may have had depression or anxiety when he first experienced a stroke," he had "substantial improvements within 12 months." AR 36. The ALJ appears to base her decision with respect to Mr. Soliday's mental impairments on the fact that it was unclear to her whether Mr. Soliday's "functional problems related to just his depression or another mental impairment (vs. some other cause)." AR 35.

The ALJ then determined at step three that Mr. Soliday "does not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments" in the regulations. AR 37–38. Because she concluded that Mr. Soliday did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Mr. Soliday has the following residual functional capacity ("RFC"):

> . . . [Mr. Soliday] has the residual functional capacity to perform a medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is able to occasionally reach with the upper left extremity (non-dominant) and frequently reach with the upper right extremity (dominant) in all directions; he can occasionally feel with the left upper extremity; he can occasionally push and pull with the left lower extremity; he can stand, walk, or sit for 6 hours each in an 8-hour workday; he has an unlimited ability to engage in postural movement except for occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; he must avoid concentrated exposure to hazards, such as unprotected heights and dangerous moving machinery; and his bilateral visual acuity is at the frequent level only.

AR 37.

The ALJ concluded that Mr. Soliday was capable of performing past relevant work as a construction superintendent. AR 40. Accordingly, Mr. Soliday was deemed not to have been under a disability from April 2, 2015 through the date of her opinion, October 31, 2017. AR 42.

## **Analysis**

Mr. Soliday argues that the ALJ's decision should be reversed because her finding that Mr. Soliday was not disabled is not supported by substantial evidence. Specifically, Mr. Soliday argues that the ALJ's treatment of the medical opinions in the record and use of hypotheticals at the hearing were improper. The Court agrees that the ALJ's treatment of the medical opinions in the record was not in accordance with Social Security regulations and that the vocational expert's testimony was unclear such that the Commissioner failed to meet his

7

burden of establishing that Mr. Soliday could perform other work in the national economy. The Court will address these issues in the context of the ALJ's findings that (1) Mr. Soliday did not suffer from a severe mental impairment; and (2) Mr. Soliday's RFC was such that he could perform either past relevant work or other work in the national economy.

### I. The ALJ's Findings with Respect to Mr. Soliday's Cognitive Impairment.

Mr. Soliday takes issue with the ALJ's treatment of his claim that he suffers from cognitive impairment. In particular, Mr. Soliday argues that the ALJ's conclusion that his mental impairments were not severe is unreasonable and unsupported by the record. Mr. Soliday also challenges the ALJ's decision to discount the findings of Dr. Lago in favor of other nonmedical evidence relating to Mr. Soliday's mental impairment.

#### A. Step Two Analysis

The Tenth Circuit has indicated that case law prescribes a "very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676–77 (10th Cir. 2004). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.*

The ALJ's finding that Mr. Soliday's depression and anxiety impairment is not severe is unreasonable given the ALJ's treatment of the medical opinion and medical evidence in the record. There are four broad areas of functioning that an ALJ is required to consider in making a determination about whether a mental

8

impairment qualifies as severe: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 416.920a. Here, the ALJ concludes without any discussion or specific citation to the record that Mr. Soliday has either no limitations or mild limitations in each of the four areas. AR 35.

The ALJ went on to discuss the evidence in the record relating to Mr. Soliday's depression and anxiety, concluding that the limitations were not severe by the end of the 12-month period after Mr. Soliday's stroke such that it did not satisfy the duration requirement. But, the ALJ does not relate the evidence back to the four functional areas. Instead, she concludes he has "normal mental functioning" as evidenced by his "activities." AR 36. The ALJ focuses on Mr. Soliday's testimony and reporting of things that he can do, but does not give any weight to his testimony about what he cannot do. This reasoning is improper and an "unfair characterization of the record." *Kaighn v. Colvin*, 13 F. Supp. 3d 1161, 1174 (D. Colo. 2014).

The ALJ did not specifically address how activities that she characterizes as evidence of Mr. Soliday's normal mental function support her conclusion that Mr. Soliday's mental limitations would not prevent him from being able to work on a regular basis necessary to keep a job. For example, while there is some evidence in the record that Mr. Soliday "took over his wife's business" for a short period of time, there is no evidence about the circumstances under which he did so. Mr. Soliday could very well have done that by working from home on a sporadic basis. *See Krauser v. Astrue*, 638 F.3d 1324, 1332–1333 (10th Cir.

9

2011) (noting that sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("In order to engage in gainful activity, a person must be capable of performing on a reasonably regular basis."); *Gonzales v. Colvin*, 69 F. Supp. 3d 1163, 1173 (D. Colo. 2014) (fact that claimant had part time job with an employer that was "highly accommodating of her impairments" does not "translate well into a determination of what the claimant can do on a sustained basis in the workplace"). At a minimum, if the ALJ were going to find evidence like this to be determinative, she should have developed the record by asking questions of Mr. Soliday about these issues at the hearing. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993) ("The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.").

### B. *The ALJ's Treatment of Medical Opinions*

An ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The applicable regulations governing the consideration of medical opinions distinguish among "treating" physicians, "examining"

10

physicians, and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.927(c). Generally, "the opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir. 1989). *See also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician's opinion is given particular weight because of his or her 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'") (quoting 20 C.F.R. § 416.927(d)(2)).

The ALJ must consider the following factors when evaluating all medical opinions:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulations nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

11

Here, the ALJ's treatment of the medical opinions was flawed for two obvious reasons. First, the ALJ did not address the relationship between Mr. Soliday and the physicians who issued the opinions, or whether the providers were specialists. Second, the ALJ did not discuss the weight assigned to the medical opinions, or address most of the factors an ALJ is required to consider when deciding how much weight to give each opinion.

In making her determination that Mr. Soliday did not have a severe mental impairment, the ALJ addressed the opinion of Dr. Lago, who administered what appears to be a comprehensive neuropsychological evaluation of Mr. Soliday in November 2015. AR 35. Dr. Lago opined that Mr. Soliday had depression and residual effects from the stroke that included visual, motor, and processing speed weaknesses, and was not capable of work at that time. AR 780–82. The ALJ claims to have accepted Dr. Lago's opinion that as of November 2015 Mr. Soliday could not work, but she discounted Dr. Lago's opinion with respect to Mr. Soliday's mental impairment because Dr. Lago examined him one time, and the ALJ believes the opinion did not specifically address Mr. Soliday's "depression (vs. stroke effects)." AR 35. This reasoning is illogical given the ALJ's reliance on the report of Dr. Kamer, who also saw Mr. Soliday once, on December 12, 2015, and who did not review Dr. Lago's report in making his recommendation. AR 785. The ALJ went on to find fault with Dr. Lago's report because, according to her, it:

> failed to narrow down what aspects of his functional problems related to just his depression or another mental impairment (vs. some other cause). This is pivotal because I cannot determine whether he met or equaled a listing in November 2015 with respect to an underlying mental impairment.

12

*Id.* This makes little sense. It is obvious from Dr. Lago's comprehensive evaluation that Mr. Soliday had at least marked if not severe limitations in the four broad areas of functioning used to evaluate mental disorders in the Listing of Impairments. AR 35; 20 CFR, Part 204, Subpart P, Appendix 1. Whether the limitations stem from depression caused by his stroke or other "situational" factors is not pertinent to the severity of his limitations. This comment also fails to recognize the portion of Dr. Lago's report which indicates that Mr. Soliday's depression is likely caused by the stroke. AR 914. This is consistent with Dr. McIntosh's conclusions, as well as other medical providers', that Mr. Soliday's "mood disorder" was due to "brain injury." AR 767, 771, 1219.

The ALJ also discounted the opinion of Dr. McIntosh, a neurologist who saw Mr. Soliday at least twice in the year following his stroke. AR 764, May 8, 2015; AR 769, August 13, 2015. Dr. McIntosh's report was dated March 2, 2016, eleven months after the stroke. Here, the ALJ addressed Dr. McIntosh's opinion and assigned it "little weight" because it was "not consistent with the record, including his own treatment notes." AR 39. However, the ALJ did not address whether she considered Dr. McIntosh to be a treating or examining physician. This distinction is critical, especially because Dr. McIntosh's opinion was the only one in the record reflecting a medical provider's observations of Mr. Soliday at the end of the 12-month period following his stroke.

This Court's review of the medical records relating to Dr. McIntosh's examination and treatment of Mr. Soliday indicate that more than 12 months after his stroke, many of Mr. Soliday's issues were not resolved: third nerve palsy,

apraxia due to stroke, neuropathic pain, thalamic pain syndrome, tremor of left hand, anxiety and depression, and double vision. AR 1097–99, 1105, 1120, 1264 (noting his "wife is important in all iADLs" & "difficult adjustment with depression" on May 6, 2016). Dr. McIntosh's conclusions are supported by later notations about Mr. Soliday's issues. *See* AR 1278 (August 5, 2016, with respect to mood disorder due to stroke: "recent flare off therapy will resume and increase" his prescription); AR 1279 (August 5, 2016: "still experiences pain in left upper leg particularly the lateral thigh"); AR 1274 (January 30, 2017, "daily anxiety, prone to agoraphobia").

In essence, the ALJ concluded that Mr. Soliday was not disabled because he had improved and, in her opinion, was not disabled at the time the hearing, which occurred on August 22, 2017. The ALJ should have addressed separately the medical evidence from the initial 12-month period after Mr. Soliday's stroke, which ended April 2, 2016, and the period after April 2, 2016. She did not.

In making her decision, the ALJ also failed to acknowledge that Mr. Soliday's testimony about his limitations was supported by significant medical evidence in the record, including the records of Mr. Soliday's treatment by Dr. McLaren for anxiety and depression. While the ALJ focused on Dr. McLaren's notations that supported her own conclusion, she did not acknowledge Dr. McLaren's notations about Mr. Soliday's limitations. *See* AR 833 (noting "ongoing deficits" after stroke). This is improper picking and choosing. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his

position while ignoring other evidence."). *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

In viewing the record as a whole, it is difficult to determine how the ALJ did anything other than substitute her judgment for those of Dr. McIntosh and Dr. McLaren. She was not entitled to do so. *See Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir. 1996) (an ALJ cannot interpose his own "medical expertise" over that of a physician); *Miranda v. Barnhart*, 205 F. App'x 638, 641 (10th Cir. 2005) ("The ALJ's approach impermissibly put him in the position of judging a medical professional on the assessment of medical data."). In any event, the reasons she gave for discrediting these opinions are either not legitimate or not borne out by the record, and therefore her conclusions at step two and her RFC findings do not constitute substantial evidence.

## II.   The ALJ's RFC Finding of Medium Work

Mr. Soliday next argues that the ALJ's finding that Mr. Soliday had an RFC to perform a "reduced range of medium work" (AR 40) was not supported by substantial evidence and was contrary to the Vocational Expert's testimony at the hearing. The Court agrees for the reasons discussed below.

First, the ALJ relied on the report of Dr. Kamer to support her finding that Mr. Soliday had the capacity to perform a "reduced range of medium work." AR 40. However, the ALJ did not address whether Dr. Kamer was a treating, examining, or consulting physician, and more importantly, failed to explain how

15

much weight she assigned Dr. Kamer's opinion. The ALJ indicates she finds Dr. Kamer's opinion "more supported" by the evidence in the record than Dr. McIntosh's opinion, but does not specifically address how much weight she gives the opinion. AR 40. Dr. Kamer's opinion also appears to be lacking because it did not identify Mr. Soliday's tremor or difficulties with his left side. AR 784. This deficiency was not addressed by the ALJ even though her ultimate conclusion that Mr. Soliday is limited with respect to his reaching and use of his non-dominant arm is not consistent with Dr. Kamer's opinion that indicates Mr. Soliday is cleared to work without any restriction on reaching or use of his left arm or hand. AR 40 & 790.

Second, the Court agrees with Mr. Soliday that the ALJ's conclusion that Mr. Soliday is capable of performing past relevant work is inconsistent with the Social Security regulations and the Vocational Expert ("VE") testimony at the hearing. The ALJ failed to address the functions that Mr. Soliday would be expected to perform on a regular and continuing basis. SSR 96–8p. *See also Draper v. Barnhart*, 425 F.3d 1127, 1130–1131 (8th Cir. 2005) (noting that "the test is whether the claimant has the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world") (quotes and citation omitted). More importantly, the VE responded to the ALJ's hypothetical with a limitation on the ability to reach by saying "it would be difficult for me to give you medium occupations with the limits you set forth regarding the reaching." AR 82.

The transcript of the hearing also indicates that the ALJ had to revise her hypothetical to include avoidance of concentrated hazards when asking the VE if Mr. Soliday could perform past relevant work. AR 90–93 This additional limitation resulted in the elimination of all three construction jobs as jobs Mr. Soliday would be capable of performing. *Id.* The ALJ recognized her error and went on to ask for "light" jobs that someone with Mr. Soliday's limitations could perform, and appeared to change the hypothetical back and forth with respect to any visual limitations, despite the fact that Mr. Soliday testified that he had double vision in one eye, a condition that is well-supported in the record. AR 83–88 & 805. Accordingly, the Court finds reversible error with respect to the applicability of the hypotheticals presented to the VE and the ALJ's interpretation of the VE's opinion.

### III. *The Appeals Council's Consideration of New Medical Report*

Mr. Soliday argues that when the Appeals Council affirmed the ALJ's findings, it failed to properly consider a second report prepared by Dr. Lago in January 2018. Without opining about the period during which Dr. Lago's report applies, the report should be considered on remand, and the ALJ should address the report as required under the regulations.

### **Conclusion**

The Court does not consider the ALJ's errors harmless, as the Court cannot conclude that no reasonable factfinder could have reached a different conclusion had the weight of the medical opinion evidence been adequately explained and supported by substantial evidence. *See Allen v. Barnhart,* 357

F.3d 1140, 1145 (10th Cir. 2004)*.* (concluding that, with certain "caveats, it . . . may be appropriate [in Social Security appeals] to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). Conversely, and for the same reason, the Court does not find that this case presents an appropriate occasion to exercise the Court's discretion to direct an award of benefits in Mr. Soliday's favor. *Davis v. Astrue*, No. 09-cv-00881-REB, 2010 WL 3835828, at *6 (D. Colo. Sept. 23, 2010). Accordingly, the case must be remanded for further proceedings.

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

Dated this 23rd day of October, 2019.

BY THE COURT:

*[signature: N. Reid Neureiter]*

N. Reid Neureiter
United States Magistrate Judge